AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-28-19)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  MJ20-218 |
| | ) | |
| Facebook Account: facebook.com/aaron.raleigh | ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Target Facebook Account, further described in Attachment A, which is attached hereto and incorporated herein by this reference.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

❑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |
| Title 18, U.S.C. § 115(a)(1) | Threats Against a Federal Official |
| Title 26, U.S.C. § 7212(a) | Interfering with Administration of Internal Revenue Laws |

The application is based on these facts:

✓ See attached Affidavit of Special Agent Kerry Gee on the attached sheet

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____  is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's  signature*

Special Agent Kerry Gee, TIGTA

*Printed name and title*

◯ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  _____04/29/2020_____

*Judge's signature*

City and state:  Seattle, Washington

Hon. Brian A Tsuchida, Chief U.S. Magistrate Judge

*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **ATTACHMENT A**
## **ACCOUNT TO BE SEARCHED**

The electronically stored data, information and communications contained in,
related to, and associated with, including all preserved data associated with Facebook
account:

- **facebook.com/aaron.raleigh**

as well as all other subscriber and log records associated with the account, which are
located at premises owned, maintained, controlled, or operated by Facebook, Inc., a
company headquartered at 1601 Willow Road, Menlo Park, California:

**ATTACHMENT B**
**PARTICULAR THINGS TO BE SEIZED**

**I.    Information to Be Disclosed by Facebook**

To the extent that the information described in Attachments A and B is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, including any messages, photos, videos, records, files, logs, or other data that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the account or identifier listed in Attachment A:

a.   The contents of any available messages sent, received, or deleted by the user(s), as well as all messages in storage under, and associated with, any preservation numbers associated with the account, from September 9, 2015, through and including the date of the execution of the search warrant (including but not limited to messages, posts, chats, photos, videos, images, recordings, and communications of any kind).

b.   All records and other information regarding the identification of the account, to include full name(s), physical address(es), telephone number(s), other identifiers, login credentials, profile for the user(s), records of session times and durations, date on which the account was created, length of service, types of services utilized, the IP address used to register the account, login IP address(es) associated with

ATTACHMENT B
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

session times and dates <u>from September 9, 2015, through and including the date of the execution of the search warrant</u>, account status, email address(es) provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account numbers).

c.   Neoprint for this user <u>from September 9, 2015, through and including the date of the execution of the search warrant</u>.

d.   Photoprint for this user <u>from September 9, 2015, through and including the date of the execution of the search warrant</u>.

e.   All records or other information stored by an individual using the account, including address books, contact and buddy lists, pictures, and files.

f.   All records pertaining to communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken.

**Facebook is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.**

## II.   Information to Be Copied by the Government

All information described above in Section I that constitutes evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon) or of 18 U.S.C. § 115(a)(1) or 26 U.S.C. § 7212(a) (threats against IRS employees and other government personnel in connection with their employment), including, for each account or identifier listed on Attachment A, information pertaining to the following

ATTACHMENT B
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

matters, those violations having occurred between September 9, 2015, and the present,

including information pertaining to the following matters:

a. Evidence of the illegal possession of firearms.

b. Evidence of threats made against IRS employees and other government personnel
   in connection with their employment.

c. Evidence of an animus against government personnel.

d. Evidence indicating the account user's state of mind as it relates to the crime under
   investigation.

e. All messages, documents, and profile information, attachments, or other data that
   serves to identify any persons who use or access the account specified, or who
   exercise in any way any dominion or control over the specified account.

f. Any address lists or buddy/contact lists associated with the specified account.

g. All subscriber records associated with the account, including name, address, local
   and long distance telephone connection records, or records of session times and
   durations, length of service (including start date) and types of service utilized,
   telephone or instrument number or other subscriber number or identity, including
   any temporarily assigned network address, and means and source of payment for
   such service) including any credit card or bank account number.

h. Any and all other log records, including IP address captures, associated with the
   specified account.

ATTACHMENT B
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      i.   Any records of communications between Facebook and any person about issues

2           relating to the account, such as technical problems, billing inquiries, or complaints

3           from other users about the specified account.  This to include records of contacts

4           between the subscriber and the provider's support services, as well as records of

5           any actions taken by the provider or subscriber as a result of the communications

ATTACHMENT B
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# AFFIDAVIT OF KERRY GEE

STATE OF WASHINGTON      )
                         )      ss
COUNTY OF KING           )

I, Kerry Gee, a Special Agent with the Treasury Inspector for Tax Administration, having been duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for the Facebook account **facebook.com/aaron.raleigh**, with the username "Aaron Raleigh," stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California.  As described in the following paragraphs, the Facebook account to be searched is associated with Aaron RALEIGH, who is currently the subject of an ongoing investigation into threats against IRS personnel and illegal firearm possession.  Preservation requests were sent to Facebook for this account on October 17, 2019, January 17, 2020, and April 13, 2020.

2.      The information to be searched is described in the following paragraphs and in Attachment A to the requested warrant.  I am seeking a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Attachment A.  Upon receipt of the information described in Attachment A, government-authorized persons will review that information to locate the items described in Attachment B.

3.      I am a Special Agent with the Treasury Inspector General for Tax Administration (TIGTA), having been so employed since July 2011, and am currently assigned to the Seattle, Washington Field Office.  I have completed the Criminal Investigator Training Program, TIGTA Special Agent Basic Training Program, and the TIGTA Special Agent Advanced Training Program at the Federal Law Enforcement Training Center (FLETC).  While at the FLETC, and as a TIGTA Special Agent, I have received extensive instruction and training relating to general investigative techniques, and legal principles and statutes pertaining to criminal violations of federal law, including but not limited to the investigation of threats and assaults on Internal Revenue Service (IRS) employees in connection with their employment (18 U.S.C. § 115(a)(1); 26 U.S.C. § 7212(a)) and possession of firearm and ammunition by prohibited persons (18 U.S.C. § 922(g)).

4.      I have found, in my experience, that subjects of all types of criminal investigations routinely use digital devices and social media in the commission of a crime.  I know from my training and experience that prohibited persons under 18 U.S.C. § 922(g) use websites, forums, and social media sites such as Facebook to make purchases, sales, and trades of firearms and ammunition, and to post photos online of firearms and ammunition that they possess.  Likewise, I know from my training and experience that persons who threaten federal government employees, including IRS employees, in violation of 18 U.S.C. § 115(a)(1) and 26 U.S.C. § 7212(a), commonly do so in social media posts or messages.

AFFIDAVIT OF KERRY GEE – 2
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5.     The facts set forth in this affidavit are based on my personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information I have gained through my training and experience.  When the statements of others are set forth in this affidavit, they are set forth in substance and in part.  Times listed are approximate.

6.     Because this affidavit is submitted for the limited purpose of establishing probable cause in support of this search warrant application, the affidavit does not set forth every fact that I or others have learned in this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the crimes described here will be found in the Facebook account information particularly described in Attachment A.

## THE INVESTIGATION

### A.     Threat to IRS Employees

7.     This investigation of subject Aaron RALEIGH (hereinafter RALEIGH) began on October 17, 2019, when an employee of the IRS in Fresno, California, provided a copy of correspondence the IRS had received from RALEIGH.  In the correspondence, RALEIGH responded to an IRS Request for a Collection Due Process or Equivalent Hearing (Form 12153).  RALEIGH wrote, in part: "I'm done playing with you assclowns,

AFFIDAVIT OF KERRY GEE – 3
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

fucking threaten me again and I'll show you my 'right to use deadly force' <u>as I was</u>

<u>trained to by those who made me promise to kill assholes like y'all, foreign or domestic</u>":



RALEIGH also wrote that "I'm done placating you fuckwads, I have the right +

responsibility to use deadly force, come get some bitches," then signed what appears to

be his name or initials:



## B. Criminal History

8.      RALEIGH's criminal history record lists multiple felony convictions, each

of which prohibits him from possessing a firearm or ammunition.  18 U.S.C. § 922(g)(1).

AFFIDAVIT OF KERRY GEE – 4
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9.      According to the results of my search of King County Superior Court records, RALEIGH was convicted in 1985 (case no. 85-1-00700-6) of taking a motor vehicle without permission (listed as a Class B felony).  RALEIGH signed a plea agreement acknowledging the maximum sentence was not more than 5 years and/or a $10,000 fine.  The prosecutor recommended 90 days' confinement.  RALEIGH was sentenced to 57 days in jail and 12 months of community supervision.

10.      King County Superior Court records also showed that RALEIGH was convicted in 1986 (case no. 85-1-04053-4) of attempted theft in the first degree (listed as a Class C felony).  RALEIGH signed a plea agreement acknowledging the maximum sentence was 5 years and/or a $10,000 fine, and the standard sentence range was 3 to 9 months.  The prosecutor recommended 4 months' confinement.  RALEIGH was sentenced to 120 days in jail and 12 months of community supervision.

11.      King County Superior Court records also showed that RALEIGH was convicted in 1986 (case no. 86-1-00264-9) of burglary in the second degree (listed as a Class B felony).  RALEIGH signed a plea agreement acknowledging the maximum sentence was 10 years and/or a $20,000 fine.  The standard sentence range was 2 to 6 months.  The prosecutor recommended 4 months' confinement.  RALEIGH was sentenced to 120 days in jail and 12 months of community supervision.

12.      King County Superior Court records also showed that RALEIGH was convicted in 1992 (case no. 92-1-00207-4) of possession of a controlled substance (listed as a Class C felony).  RALEIGH signed a plea agreement acknowledging the maximum

AFFIDAVIT OF KERRY GEE – 5
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

sentence was 5 years and/or a $10,000 fine, and the standard sentence range was 2 to 6 months.  The prosecutor recommended 60 days' confinement.  RALEIGH was sentenced to 90 days in jail and 12 months of community supervision.[1]

### C.   Facebook Profile and Evidence of Firearm and Ammunition Possession

13.     On October 17, 2019, I viewed the publicly available information of Facebook profile **facebook.com/aaron.raleigh**, which belongs to Facebook user "Aaron Raleigh."  I compared the profile picture on that account to the Washington driver license photograph of suspect RALEIGH, and I concluded they were the same person. RALEIGH's driver license lists an address in Burien, Washington.  RALEIGH's Facebook profile page also states that the user has worked at West Coast Decks, in Issaquah, Washington, from "October 17, 2017 to present."  As discussed further below, I spoke to RALEIGH by telephone on November 1, 2019, about his threats to the IRS. During the conversation, RALEIGH told me he worked at West Coast Decks.  Based on this and other information, I believe that the Facebook user "Aaron Raleigh" is the same Aaron RALEIGH who was convicted of the felonies listed above, and who is prohibited from possessing firearms.

---

[1] Law enforcement database results for RALEIGH also show a 1997 conviction for a "Firearms/Dangerous Weapon Violation" for which he received a suspended fine of $5,000 and custodial sentence listed as "365 [Days] / Suspended 362 [Days]."  A court record I obtained from that case (no. 210250) shows that RALEIGH pleaded guilty on September 12, 1997, and that the sentence was imposed the same day.  I have thus far been unable to locate other court documents stemming from that 1997 conviction.

14.     RALEIGH's Facebook profile includes a photo of RALEIGH holding what appears to be a firearm.  In the photo, RALEIGH is standing shirtless in front of a house that bears the number 33260.  Three cars are visible in the photo, including an SUV with an Idaho license plate, 2J67208.  (A query of Idaho Department of Motor Vehicles databases showed that the registration for that license plate expired on February 28, 2015. The last registered owner of that vehicle was Sherrie Bartlett, a resident of Jerome, Idaho. This investigation has not revealed any known link or relationship between Bartlett and RALEIGH.)  This Facebook photo is publicly viewable; that is, it can be seen by any Facebook user, not just RALEIGH's Facebook friends.  According to the post's timestamp, the photo was added on August 10, 2016.  From my research of the internet and information obtained from other law enforcement officers, I believe the firearm is most likely a Hi-Point Firearms xx95 Pistol Caliber Carbine or one of its variations.



AFFIDAVIT OF KERRY GEE – 7
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15.     Based on my training and experience, I know that the Hi-Point xx95 Pistol Caliber Carbine is a semi-automatic rifle made in Ohio by the American firearm manufacturer Hi-Point Firearms, which is headquartered in Mansfield, Ohio.  Hi-Point Firearms manufactures a variety of similar carbines, in different pistol calibers and with different accessories included, which have slightly varying model designations.  For example, the .45 ACP (Automatic Colt Pistol) caliber version is designated 4595,[2] and the 10mm (10mm Automatic) caliber version is designated 1095.[3]

16.     RALEIGH's Facebook account photos include a photo of a right forearm and hand holding a pistol magazine.  There is a tattoo of a rose on the inside of the forearm.  The magazine is at least partially loaded with hollow-point ammunition.  The photo is publicly viewable.  According to the timestamp on the post, the photo was added on October 31, 2017.  The photo is accompanied by a caption: "November 4th, Antifa better know which bathroom to run & hide in! Mercury capped 45 ACP, you DID declare war upon veterans & Americans. I'm the 1 in the Hank Jr shirt & cowboy hat & boots (to kick ya in da nutz) come git some."  The post is followed by "—with mdercury [*sic*] capped 45 ACP in White Center, Washington."

---

[2] https://www.hi-pointfirearms.com/hi-point-carbines/hi-point-45acp-carbine.php (last visited Apr. 24, 2020).
[3] https://www.hi-pointfirearms.com/hi-point-carbines/hi-point-10mm-carbine.php (last visited Apr. 24, 2020).

AFFIDAVIT OF KERRY GEE – 8
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



17.     RALEIGH's Facebook profile also includes a publicly viewable close-up photo of this tattoo.  According to this post's timestamp, the close-up photo was added September 9, 2015.  This post includes the caption: "New ink, sweet & simple!"



AFFIDAVIT OF KERRY GEE – 9
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**D.      Phone Interview on November 1, 2019**

18.      On November 1, 2019, I visited RALEIGH's residence at 14034 1st Ave S, Burien, WA, but he was not home.  I met RALEIGH's friend/roommate, Sonny (last name unknown), and RALEIGH's daughter, Desiree Leon.  They confirmed that RALEIGH lived there and told me he was working but reachable by cell phone.  Sonny called RALEIGH and handed his phone to me.  RALEIGH told me he was on the road working and could not meet or talk, but would contact me later to schedule a time to meet and be interviewed.  RALEIGH asked me to text my contact information to his cell phone, (206) 856-0333.  At 9:23 a.m., I sent a text message to RALEIGH's phone.

19.      RALEIGH called me back about three hours later.  He demanded to know the interview's purpose before agreeing to meet with me.  I said the interview's purpose was to talk about his interactions with the IRS.  RALEIGH refused to speak to anyone representing the IRS.  He said he had no business with the IRS, and therefore no business speaking to me.  He refused to meet in person; however, he agreed to speak with me via telephone.  I asked RALEIGH if he had recently sent a letter to the IRS threatening to harm IRS employees.  He confirmed that he had sent a letter but said he did not threaten anyone.  I advised him that the letter contained threatening language and that he was potentially violating federal law, which could result in arrest and prosecution.  RALEIGH said that he had received documents from the IRS in which the IRS threatened to arrest him.  (Later in the interview, he said that he no longer had those documents to provide to me.)  I advised him that the IRS does not threaten to arrest taxpayers over civil tax

AFFIDAVIT OF KERRY GEE – 10
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

matters.  He became increasingly angry and yelled at me.  He said that he would go to the

IRS office in Utah and put his hands on someone in order to work out his problems.

20.     I turned on an Olympus audio-recording device and put the call on

speakerphone.  The rest of the call was recorded.

21.     During this phone call, RALEIGH admitted that he had previous felony

convictions and stated that he had lost his voting rights for five years.  But he claimed

that he had never lost his right to possess firearms.  When I asked RALEIGH if he owned

firearms, he said: "Oh . . . Damn!  You know I could answer that but my Second

Amendment tells me I don't have to."  He continued: "So I may or may not.  Understand

that if I do, I would never use it in an illegal fashion.  It's, it'd strictly be for self-defense

or for maybe hunting a deer."  When I asked RALEIGH if he intended to shoot anyone,

he said: "I wouldn't shoot somebody that's, wha, wha, what I shoot, I, is, is distance.

Distance.  I don't need to do anybody dis, at a distance, that's for the enemy.  Or for deer.

Okay? If these motherfuckers wanna come up and, and, and make it personal?  Then trust

me, it's gonna be a hands on situation 'cuz I'm gonna be looking in their eyes and I want

them to be able to look into my eyes."

22.     RALEIGH also told me that he had been in the Army Rangers.[4]  He stated

that "[t]he only way to disarm an Army Ranger is you need to scoop the brains out of

---

[4]  The 75th Ranger Regiment, also called the Army Rangers, describes itself as "the U.S. Army's premier large-scale special operations force."  https://www.goarmy.com/ranger.html (last visited Apr. 24, 2020).  I have not confirmed RALEIGH's service in the U.S. Army.

AFFIDAVIT OF KERRY GEE – 11
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their fucking skull.  Because as long as our body is intact and our mind is working, we're a thermonuclear device."

23.     Near the end of the call, I asked RALEIGH to stop threatening people, and he said that he would.  He stated that he has been told he has an "abrasive personality" and that he "can really rile people up" because he is "passionate about my Constitution." He told me to have a wonderful weekend.

### E.     Prior Threat to President Obama and Contact with Secret Service

24.     RALEIGH's publicly viewable Facebook posts also include a post dated September 12, 2017, that features a photo of U.S. Secret Service Special Agent Peter Vogl's business card, along with the caption: "So, after ducking me for 7 years I'm finally gonna get some answers, they think they are the ones with questions, not today employees, I got questions and YOU work for ME!"



25.     I spoke with Agent Vogl, who told me that in September 2017, he interviewed RALEIGH about a threat that RALEIGH made by email against former

President Barack Obama.  In an email to Organizing for Action, a nonprofit founded by

former President Obama, RALEIGH wrote: "The federal government made him promise

to kill those who would subvert our Constitution, be they foreign or domestic, you ARE

domestic terrorists being run by an assclown Muslim fucktard ex-president (presidents

are ELECTED, residents are placed) He and you are now violating the ideals of the

Constitution, therefore you have made yourselves targets to 21.8 million damn good

shooters who ALL want to earn a Congressional Medal of Honor for killing subversives

in America, the way the Feds made us promise to & trained us to do."

26.     When interviewed by Agent Vogl in September 2017, RALEIGH said that

he thought former President Obama violated the Constitution and should be held

accountable for his actions.  RALEIGH stated that if no legal action was taken against

President Obama, physical harm might happen.  RALEIGH clarified that he did not mean

that he would be the one to cause that physical harm but that someone else would more

than likely do something. RALEIGH also told Agent Vogl that RALEIGH did not have

the time, resources, or personal justification to commit an act of violence against former

President Obama or anyone else.  Agent Vogl told me that RALEIGH was cooperative

during the interview and apologetic for what had happened.

## F.     Other Information

27.     In addition to the publicly viewable information described above, I believe,

based on my training and experience, that RALEIGH's Facebook account may include

nonpublic photos, messages, or other data concerning his acquisition or possession of

AFFIDAVIT OF KERRY GEE – 13
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

firearms, his felon status, and his threats against federal employees.  I know from my training and experience that prohibited persons use websites, forums, and social media sites such as Facebook to facilitate purchases, sales, and trades of firearms, and to post photos online of firearms they currently possess, as a way to share information and display their property.  These individuals share photos and communicate via various media, including emails, internet chat rooms, private Facebook messages, and other social media messaging technologies.  I also know from my training and experience that persons who make threats against government personnel use social media to communicate those threats, through public and private posts, tweets, messages, re-posts or re-tweets of others' threats, and comments on their own or others photos and posts.

28.     Accordingly, the United States requests specified content and records of Facebook profile **facebook.com/aaron.raleigh**.  I have probable cause to believe that the requested information will provide evidence that RALEIGH possessed firearms or ammunition as a felon, in violation of 18 U.S.C. § 922(g)(1); that he threatened federal officers, in violation of 18 U.S.C. § 111; and that he used threats of force to intimidate or impede U.S. employees acting under Title 26 and to obstruct, impede, or endeavor to obstruct or impede the due administration of Title 26, in violation of 26 U.S.C. § 7212(a).

### FACEBOOK SOCIAL NETWORKING SERVICES

29.     Facebook owns and operates a free-access social networking website of the same name accessible at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written

AFFIDAVIT OF KERRY GEE – 14
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

news, photographs, videos, and other information with other Facebook users and, sometimes, with the general public.

30.     Facebook asks users to provide basic contact and personal identifying information, either during the registration process or thereafter.  This information includes the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

31.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

32.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or

AFFIDAVIT OF KERRY GEE – 15
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

herself, to particular Facebook users, or to anyone with access to the internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

33.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the events' time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that typically are visible to anyone who can view the user's profile.

34.     Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been

AFFIDAVIT OF KERRY GEE – 16
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

35.     Facebook users can exchange private messages on Facebook with other users.  These messages, which are similar to e-mail messages, are sent to the recipient's Facebook "Inbox," which also stores copies of messages sent by the recipient, as well as other information.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook.  These chat communications are stored in the chat history for the account.  Facebook also has a Video Calling feature, and, although Facebook does not record the calls themselves, it does keep records of the date of each call.

36.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

37.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

38.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

AFFIDAVIT OF KERRY GEE – 17
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

39.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

40.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

41.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

42.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

43.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

AFFIDAVIT OF KERRY GEE – 18
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

44.     Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

45.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

46.     Facebook uses the term "Photoprint" to describe a compilation of all photos uploaded by a user that have not been deleted, along with all photos uploaded by any user which have the requested user tagged in them.

47.     Facebook also retains Internet Protocol (IP) logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP

AFFIDAVIT OF KERRY GEE – 19
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

48.   Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

49.   Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

50.   Under 18 U.S.C. § Section 2703(g), this application and affidavit for a search warrant seeks authorization to permit Facebook, and its agents and employees, to

AFFIDAVIT OF KERRY GEE – 20
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

assist agents in the execution of this warrant.  Once issued, the search warrant will be presented to Facebook with direction that it identify the Facebook account described in Attachment A to this affidavit, as well as other subscriber and log records associated with the accounts, as set forth in Section I of Attachment B to this affidavit.

51.     The search warrant will direct Facebook to create an exact copy of the specified account and records.

52.     I and/or other law enforcement personnel will thereafter review the copy of the electronically stored data and identify from among that content those items that come within the items identified in Section II to Attachment B for seizure.

53.     Analyzing the data contained in the forensic image may require special technical skills, equipment, and software.  It could also be very time consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant.  Merely finding a relevant "hit" does not end the review process. Keywords used originally need to be modified continuously, based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common applications do not store data as searchable text.  The data may be saved instead in proprietary non-text format.  And as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases as well.  Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data-

AFFIDAVIT OF KERRY GEE – 21
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

analysis techniques and may take weeks or even months.  All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

54.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of electronic communications, chat logs, and documents that identify any users of the subject account and messages sent or received in temporal proximity to incriminating messages that provide context to the incriminating communications.

## CONCLUSION

55.     Based on the forgoing, I request that the Court issue the proposed search warrant.  This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States" that "has jurisdiction over the offense being investigated."  18 U.S.C. § 2711(3)(A)(i).  Under 18 U.S.C. § 2703(g), the government will execute this warrant by serving it on Facebook.  Because the warrant will be served on Facebook, which will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.  Accordingly, by this affidavit and warrant, I seek authority for the government to search all of the items specified in Section I, Attachment B (attached hereto and incorporated by reference herein) to the warrant,

AFFIDAVIT OF KERRY GEE – 22
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   and specifically to seize all of the data, documents and records that are identified in

2   Section II to that same attachment.

3

4       56.     Under Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this affidavit

5   and search warrant application are presented by reliable electronic means.

6

7

8       _____
        KERRY GEE
9       Special Agent
        Treasury Inspector General for Tax
10      Administration

11

12

13

14      The above-named agent provided a sworn statement to the truth of the foregoing

15  affidavit by telephone on the 29th day of April, 2020.

16

17

18      _____
        HON. BRIAN A. TSUCHIDA
19      Chief United States Magistrate Judge

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF KERRY GEE – 23
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>ATTACHMENT A</u>**
**ACCOUNT TO BE SEARCHED**


The electronically stored data, information and communications contained in,

related to, and associated with, including all preserved data associated with Facebook

account:

- **facebook.com/aaron.raleigh**


as well as all other subscriber and log records associated with the account, which are

located at premises owned, maintained, controlled, or operated by Facebook, Inc., a

company headquartered at 1601 Willow Road, Menlo Park, California:

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B
## PARTICULAR THINGS TO BE SEIZED

**I.    Information to Be Disclosed by Facebook**

To the extent that the information described in Attachments A and B is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, including any messages, photos, videos, records, files, logs, or other data that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the account or identifier listed in Attachment A:

a.   The contents of any available messages sent, received, or deleted by the user(s), as well as all messages in storage under, and associated with, any preservation numbers associated with the account, <u>from September 9, 2015, through and including the date of the execution of the search warrant</u> (including but not limited to messages, posts, chats, photos, videos, images, recordings, and communications of any kind).

b.   All records and other information regarding the identification of the account, to include full name(s), physical address(es), telephone number(s), other identifiers, login credentials, profile for the user(s), records of session times and durations, date on which the account was created, length of service, types of services utilized, the IP address used to register the account, login IP address(es) associated with

ATTACHMENT B
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

session times and dates <u>from September 9, 2015, through and including the date of the execution of the search warrant</u>, account status, email address(es) provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account numbers).

c.  Neoprint for this user <u>from September 9, 2015, through and including the date of the execution of the search warrant</u>.

d.  Photoprint for this user <u>from September 9, 2015, through and including the date of the execution of the search warrant</u>.

e.  All records or other information stored by an individual using the account, including address books, contact and buddy lists, pictures, and files.

f.  All records pertaining to communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken.

**Facebook is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.**

## II.  Information to Be Copied by the Government

All information described above in Section I that constitutes evidence, fruits, or instrumentalities of violations of 18 U.S.C. § 922(g)(1) (possession of a firearm by a felon) or of 18 U.S.C. § 115(a)(1) or 26 U.S.C. § 7212(a) (threats against IRS employees and other government personnel in connection with their employment), including, for each account or identifier listed on Attachment A, information pertaining to the following

ATTACHMENT B
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

matters, those violations having occurred between September 9, 2015, and the present, including information pertaining to the following matters:

a. Evidence of the illegal possession of firearms.

b. Evidence of threats made against IRS employees and other government personnel in connection with their employment.

c. Evidence of an animus against government personnel.

d. Evidence indicating the account user's state of mind as it relates to the crime under investigation.

e. All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account.

f. Any address lists or buddy/contact lists associated with the specified account.

g. All subscriber records associated with the account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service) including any credit card or bank account number.

h. Any and all other log records, including IP address captures, associated with the specified account.

ATTACHMENT B
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i.   Any records of communications between Facebook and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications

ATTACHMENT B
USAO#2020R00095

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS
PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Facebook, Inc. ("Facebook"), and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Facebook.  The attached records consist of _____ [GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)].  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, were kept in the ordinary course of Facebook's regularly conducted business activity, and were made by Facebook as a regular practice; and

b.      such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

Date:_____          Signature:_____

USAO#2020R00095